IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| PHILLIP RUNKEL, | ) | Criminal No.: 1:16-cr-00267 (CMH/IDD) |
| MANIJEH SABA, | ) | Criminal No.: 1:16-cr-00270 (CMH/IDD) |
| ELIZABETH ADAMS, | ) | Criminal No.: 1:16-cr-00273 (LO/IDD) |
| MALACHY KILBRIDE, | ) | Criminal No.: 1:16-cr-00276 (GBL/IDD) |
| Defendants. | ) | |
| | ) | |

## SUMMARY OF PROCEEDINGS PURSUANT TO RULE 58(g)

Elizabeth Adams, Malachy Kilbride, Phillip Runkel, and Manijeh Saba ("Defendants"),

*pro se*, have each appealed the judgment of United States Magistrate Judge Ivan D. Davis

pursuant to Rule 58(g)(2)(B), finding each guilty of failing to obey a lawful order outside the

Pentagon Building. (Notices of Appeal, November 9, 2016–November 17, 2016.)[1]

### Procedural History

On September 26, 2016, at the Pentagon Metro "south pushout," in Arlington, Virginia,

Defendants were issued citations by the Pentagon police for violation of a lawful order.  The

Defendants were cited for violating Title 32 of the Code of Federal Regulations Section 234.6(b),

which prohibits "violating the lawful order of a government employee or agent authorized to

maintain order and control public access and movement during . . .  law enforcement actions . . .

where the control of public movement and activities is necessary to maintain order and public

health or safety."[2]

---

[1] Elizabeth Adams filed her appeal on November 9, 2016; Phillip Runkel and Manijeh Saba filed their appeals on November 16, 2016; Malachy Kilbride filed his appeal on November 17, 2016.
[2] "The following are prohibited: [ ] Violation of a lawful order. Violating the lawful order of a government employee or agent authorized to maintain order and control public access and movement during fire fighting

On October 27, 2016, Defendant Kilbride and Defendant Runkel filed identical Motions to Compel Additional Discovery (*United States v. Kilbride*, No. 1:16-po-3074, Dkt. No. 3; *United States v. Runkel*, No. 1:16-po-3080, Dkt. No. 3); On October 28, 2016, Defendant Saba also filed an identical Motion to Compel Additional Discovery (*United States v. Saba*, No. 1:16-po-3079, Dkt. No. 3). Defendant Adams did not file a motion to compel, but she was tried in a joint trial where the Motion to Compel was heard as a preliminary matter. Defendants' Motions to Compel sought various discovery items indicating prior knowledge of Defendants' planned visit to the Pentagon to deliver signed petitions via the Pentagon Police to the Secretary of Defense, including all government action plans, audiotapes, videotapes, documents, emails, files, photographs, police reports, and transcripts related to the World Beyond War conference, the National Campaign for Nonviolent Resistance, Code Pink, and Veterans For Peace. Defendants' Motions to Compel also sought a "complete copy of the audio and video tape taken by a Pentagon Police videographer," and documents related to "data gathered by Stingray and Geofeedia technology." Finally, Defendants' Motions to Compel also sought other intelligence information from the Pentagon, including a Pentagon Intelligence Report and information related to Defendants' planned delivery of a petition to the Secretary of Defense on September 26, 2016.

The United States filed a response to Defendants' Motions to Compel Additional Discovery. (*United States v. Kilbride*, No. 1:16-po-3074, Dkt. No. 4; *United States v. Saba*, No. 1:16-po-3079, Dkt. No. 4; *United States v. Runkel*, No. 1:16-po-3080, Dkt. No. 4.) The United States opposed the Motions to Compel as premature because Defendants had never requested any discovery prior to filing their Motions to Compel. (*Id.* at 1.) The United States provided Defendants with a copy of the police report supporting the charges, the contemporaneous

---

operations, search and rescue operations, law enforcement actions, and emergency operations that involve a threat to public safety or government resources, or other activities where the control of public movement and activities is necessary to maintain order and public health or safety." 32 CFR § 234.6(b).

Integrated Emergency Operations Center Incident notes, the Defendants' violation notices, the Defendants' criminal histories, a disk containing video capturing the incident and the arrests, and a disk containing the police radio traffic related to the incident and arrests. (*Id.* at 3.)

On November 3, 2016, Defendants, *pro se*, appeared before the undersigned Magistrate Judge for a bench trial. At trial, Defendant Malachy Kilbride presented arguments on behalf of the Defense. As a preliminary matter, Defendant Kilbride argued in support of Defendants' Motions to Compel Additional Discovery as to the Pentagon's daily intelligence reports. In an effort to assist the Defendants, the Court defined relevance. The Court explained that relevant information is that information that tends to make more or less probable the elements of the offense. The Court informed the Defendants that the elements of the charge of disobeying a lawful order were whether an order was issued, whether that order was lawful, and whether Defendants violated the order. The undersigned denied Defendants' Motions to Compel Additional Discovery as to the daily intelligence reports because the request was not relevant to the charge of violating a lawful order and therefore not relevant at trial. Defendants did not argue any other issues in support of their Motions to Compel.

At trial, nine co-defendants were present, four of which have filed an appeal. At trial, ten witnesses testified: Defendants called Elizabeth Adams, Felton Davis, Janice Sevre-Duszynska, Nancy Gowen, Malachy Kilbride, Arthur Laffin, Phillip Runkel, Manijeh Saba, and Eve Tetaz. The United States called Lieutenant Anthony Dozier.

Lieutenant Dozier testified that he has been a police officer with the Pentagon for seventeen years and that he worked for the D.C. and South Carolina Department of Corrections prior to working at the Pentagon. He testified that on the morning of September 26, 2016, he was assigned to the Pentagon Visitors Entrance Facility ("VEF") and the Pentagon Metro Entrance

3

Facility ("MEF"). He testified that he was the commander at that location and that his duties were to ensure all visitors and building occupants entering the Pentagon facility have the proper credentials to enter. Lieutenant Dozier testified that on that day he was in uniform and carrying a badge.

Lieutenant Dozier identified each Defendant in the courtroom as being present on September 26, 2016. The Government requested that the record reflect that Lieutenant Dozier had identified all of the Defendants; in response, the Court asked the Government to call each Defendant by name, have each Defendant stand, and have Lieutenant Dozier identify each Defendant individually. The Government called each Defendant by name, each Defendant stood, and Lieutenant Dozier identified each Defendant individually. The Government again requested that the record reflect that Lieutenant Dozier had identified all of the Defendants and the Court granted this request. Lieutenant Dozier testified that he first came into contact with the Defendants at the designated protest area outside the metro facilities near the Pentagon. Lieutenant Dozier testified that the designated protest area is on the Pentagon Reservation, in the Special Maritime and Territorial Jurisdiction of the United States, in the Eastern District of Virginia.

Lieutenant Dozier testified that he received a call over the radio that there was an unusually large group of protestors at the designated protest area. He testified that the purpose of the designated protest area is for peaceful protesting and that the area is about twenty-five to forty yards from the metro entrance. He also testified that the designated protest area is visible and audible from the Pentagon. Lieutenant Dozier testified that some of the protesters were trying to step outside the designated protest area; in response, he asked the protesters to remain in the designated protest area until they decided to leave. Lieutenant Dozier explained that the

4

designated protest area is for the protection of the protesters, visitors, and building occupants who are trying to enter and exit the building, as well as members of the public trying to use the Washington, D.C. area metro and enter the metro at that location. Lieutenant Dozier then described the Pentagon Metro entrance and explained that over a thousand people use that entrance at around nine in the morning. Lieutenant Dozier then testified that after the Defendants finished protesting, they walked toward the "south pushout." Lieutenant Dozier explained that the south pushout is an entrance area to the Pentagon commonly used by building occupants with the proper credentials necessary to enter the Pentagon. He testified that he thought the protesters were going to enter the metro to leave, which he said they commonly do after a protest. Instead, he observed that about twenty demonstrators walked into the south pushout area, at which point Lieutenant Dozier was summoned by another police officer in that area.

Lieutenant Dozier testified that Defendants and additional protesters blocked the entryway to the Pentagon, which had the effect of also blocking the metro entrance for members of the public trying to use the metro. Lieutenant Dozier said he thought that the protesters were trying to deliver a letter. He testified that he explained to the protesters that letters must go through the Pentagon receiving department so that they can be scanned and screened before delivery. Lieutenant Dozier testified that he told the protesters that they could either go back to the designated protest area or go down into the metro; he testified that the protesters then joined hands and sat in the south pushout area and would not move. Lieutenant Dozier asked Defendants a few more times to leave and then told them that he would issue three warnings to Defendants. He then testified that he asked them to leave and then issued a warning that if they did not leave they would be subject to arrest; he testified that between each warning he gave them time to consider their options and to give them time to leave. Lieutenant Dozier gave this

warning multiple times. He then demonstrated his warning for the Court. Using a raised voice, which he testified he did on that day to ensure he was heard, he said: "I'm asking you guys to please leave the area, if you do not leave the area you are subject to be arrested. Warning one." He testified that he then gave two additional warnings. He testified that Defendants made eye contact with him during the warnings and that Defendants responded by continuing to talk amongst themselves, including saying that they had the right to deliver a letter to someone inside the building. Lieutenant Dozier testified that after the third warning he waited another minute and then commanded his officer to begin arresting Defendants for refusing to obey a lawful order to move. Lieutenant Dozier testified that he was not motivated in anyway by Defendants exercise of free speech. He testified that he was motivated by ensuring the safety of Defendants, the building occupants coming and going, and preventing a hostile environment that might prevent individuals from trying to access the building. Lieutenant Dozier testified that if Defendants had gone back to the designated protest area they could have remained in the area all day so long as they were peaceful.

On cross-examination, Defendant Kilbride questioned Lieutenant Dozier. Lieutenant Dozier testified that he first came into contact with Defendants during their protest. Lieutenant Dozier explained the domino effect caused by Defendants sitting by the south pushout, including preventing large groups of people from entering the Pentagon or the metro. Defendant Kilbride asked Lieutenant Dozier whether it was true that Defendants were also trying to seek a meeting with someone in the building. Lieutenant Dozier responded that he was unaware of that request, and that he only knew that Defendants were trying to deliver a letter. Lieutenant Dozier testified that letters to the Pentagon have to go through a screening process; Defendant Kilbride asked if that process applied to petitions as well and Lieutenant Dozier said he was unaware of a petition.

Defendant Kilbride asked for clarification about who sat down near the Pentagon and Lieutenant Dozier explained that only some protesters sat down. Defendant Kilbride asked Lieutenant Dozier to identify which Defendants were sitting down, Lieutenant Dozier testified that none of the Defendants were sitting down. Defendant Kilbride again asked about the petition and Lieutenant Dozier testified that he was unaware of a petition.

Next, Defendant Arthur Laffin cross-examined Lieutenant Dozier. Defendant Laffin asked Lieutenant Dozier what time he arrived on the scene. Lieutenant Dozier testified he was unsure about the exact time and would need to look at his notes to confirm the exact time. Defendant Laffin also asked for the number of people trying to use the entrance and Lieutenant Dozier testified he could not answer that question exactly but that he had seen reports that thousands of people use that entrance between six and eleven in the morning. Defendant Laffin asked Lieutenant Dozier to tell the Court the name of any person turned away from entering the building during that time; Lieutenant Dozier testified that his focus was on the demonstrators and that he could not testify whether anyone was actually turned away that morning. Defendant Laffin asked Lieutenant Dozier to identify any Defendant that was obstructing employees from entering the building on September 26, 2016; Lieutenant Dozier responded that all the Defendants plus about twenty others were obstructing individuals from entering the building.

Next, Defendant Manijeh Saba questioned Lieutenant Dozier. Defendant Saba asked Lieutenant Dozier whether he told the protestors that they could not go to the area near the Pentagon; Lieutenant Dozier answered that it was common for protesters to go near that area on the way to the metro or the bus and so he did not tell the protesters that they could not go into that area. Defendant Saba asked if Lieutenant Dozier had seen the letter, and Lieutenant Dozier answered that he was told about the letter by protesters but did not see the letter.

On re-direct, the Government asked whether the Metro Entrance Facility at the Pentagon was the main entry point to one of the largest buildings on Earth, to which Lieutenant Dozier answered that it was. The Government asked whether the south pushout entrance was the only entrance to the building, and Lieutenant Dozier responded that it was not. The Government also asked Lieutenant Dozier to confirm that he gave three orders, which Lieutenant Dozier confirmed. The Government asked why Lieutenant Dozier gave those orders and he answered that he was giving the demonstrators time to clear the area and return to the designated protest area or go to the metro. The Government asked why Lieutenant Dozier wanted to clear the area, and Lieutenant Dozier responded that he wanted to make sure building occupants and visitors could get into and out of the building and to make sure people could access the metro. Lieutenant Dozier confirmed that each of the Defendants failed to obey his orders.

Next, the undersigned asked Defendants whether any of them wanted to take the stand to testify. Defendant Kilbride asked to show a DVD provided by the Government, which Defendants said supported their defense. The Court explained that such requests should be provided to the Court in advance to ensure that the necessary equipment was set up and tested to ensure it was working properly. Defendant Kilbride then asked the Court if Defendant Kilbride could submit the DVD as evidence for the Court to consider in evaluating the case. The Court explained that a witness could move to admit the DVD as an exhibit. Defendant Kilbride then took the witness stand. Defendant Kilbride testified that he had seen the DVD of the events on September 26, 2016 and that the DVD showed all of the Defendants standing in a line at the south pushout of the Pentagon. Defendant Kilbride testified that the DVD did not show them sitting down or blocking the entrance of the Pentagon or the metro. Defendant Kilbride then moved to introduce the DVD into evidence; the Government did not object. Before entering the

8

DVD into evidence the undersigned asked to see the DVD to confirm the DVD worked on the courthouse's equipment; the undersigned explained that in his experience electronic evidence from other government agencies did not always work on the courthouse's equipment. The undersigned then explained to Defendants that if the DVD did not work on the courthouse equipment the DVD would not aid in their defense. The undersigned then tested the DVD on his court-issued computer and found that the DVD did not work. The undersigned then explained to Defendant Kilbride that the only way that Defendants could get the information contained on the DVD into evidence was to call individual Defendants to testify as to what the DVD contained or to testify as to what happened on the day in question. The undersigned then returned the DVD to Defendant Kilbride. Defendant Kilbride took the stand again and testified that the DVD was mailed to him via United States mail from Mr. Embroski along with the Government's response to Defendants' Motions to Compel.

Defendant Kilbride then called several witnesses to testify regarding the DVD. Defendant Eve Tetaz testified that she was at the Pentagon on September 26, 2016 to present a letter to the Pentagon. Defendant Tetaz testified that she did not block the entrance to the Pentagon and that she got to the Pentagon by taking the metro. The Government then cross-examined Defendant Tetaz. The Government asked Defendant Tetaz where she was arrested on September 26, 2016 and Defendant Tetaz answered that she was arrested at the entrance to the Pentagon.

Next, Defendant Kilbride called Defendant Felton Davis. Defendant Davis testified that he got to the Pentagon via city bus. Defendant Davis testified that he did not go to the demonstration area on that date and was not carrying any signs or banners. Defendant Davis also testified that he brought a petition with him that he wanted to deliver to Ashton Carter, the Secretary of Defense.  Defendant Davis testified that he did not sit down, join hands, or attempt

9

to block any employees. Defendant Kilbride asked Defendant Davis to identify a document, which Defendant Davis testified was the petition that he attempted to deliver. Defendant Davis testified that he was trying to request a meeting as well. Defendant Kilbride then moved to introduce the petition into evidence. The petition was accepted by the Court. The Government cross-examined Defendant Davis. The Government asked Defendant Davis where he was arrested; Defendant Davis testified he was arrested at the metro entrance. The Government asked Defendant Davis if he heard Lieutenant Dozier issue a warning and order to leave or risk being arrested; Defendant Davis testified that he did hear Lieutenant Dozier issue that warning and Defendant Davis said he wanted it to be noted on the record that he heard Lieutenant Dozier issue the warning.

Next, Defendant Nancy Gowen testified. Defendant Gowen testified that on September 26, 2016 she was at the Pentagon to join demonstrators who wanted to present a petition to someone in the Pentagon. Defendant Gowen testified that there were about twenty people in the group. Defendant Gowen testified that she did not block or obstruct the entrance and did not try to enter the Pentagon without permission. Next, the Government cross-examined Defendant Gowen. The Government asked if Defendant Gowen left after Lieutenant Dozier warned her to leave the area. In response, Defendant Gowen testified that she heard all three warnings issued by Lieutenant Dozier.

Next, Defendant Arthur Laffin testified. Defendant Laffin testified that on September 26, 2016 he arrived at the Pentagon via bus. Defendant Laffin testified that he walked to the metro entrance area to join the other demonstrators to present the petition to plead for an end to war, to stop environmental degradation that the Pentagon is contributing to every day, and to be a voice for the poor and the victims who die because of misused resources that are allocated for

weapons, war and killing, and to present a message of nonviolence. Defendant Laffin testified that while he was trying to deliver the petition there was another group of people demonstrating in the designated protest area. Defendant Laffin testified that he was at the entrance to the Pentagon and that he did not try to obstruct or block anybody from entering. Defendant Laffin testified that he waited for ten minutes while police officers discussed the demonstrators request to deliver their petition to someone in the Pentagon. Next, the Government cross-examined Defendant Laffin. The Government asked Defendant Laffin if he heard Lieutenant Dozier issue a warning to leave the area or risk being arrested. Defendant Laffin testified that he heard Lieutenant Dozier give a warning.

Next, Defendant Phillip Runkel testified. Defendant Runkel testified that he arrived at the Pentagon via bus on September 26, 2016. Defendant Runkel testified that he and others went to the metro entrance to deliver a petition to someone in authority at the Pentagon. Defendant Runkel testified that he did not block the entrance to the Pentagon nor did he see anyone who was prevented from entering the Pentagon. On cross-examination, the Government asked Defendant Runkel if he heard Lieutenant Dozier issue the order to please leave the area or risk being arrested. Defendant Runkel testified that he did hear the order.

Next, Defendant Manijeh Saba testified. Defendant Saba testified that she took the metro and a bus to get to the Pentagon on September 26, 2016. Defendant Saba testified that she was at the Pentagon to redress her grievances regarding war and injustice and to deliver the petition. Defendant Saba testified that as a naturalized citizen she had to take an oath to uphold the Constitution and that the rights of citizens have been violated. Defendant Saba testified that she did not block the entrance to the Pentagon. She testified that based on her life experience she could tell the difference between a legitimate and illegitimate government. On cross-

11

examination, the Government asked Defendant Saba if she heard Lieutenant Dozier issue the order to leave or risk arrest. Defendant Saba testified that she heard Lieutenant Dozier issue the order three times and that she did not leave. Next, the undersigned asked Defendant Saba whether the other co-defendants sitting in the courtroom were also present when Lieutenant Dozier issued the order to leave or risk arrest. Defendant Saba testified that the other co-defendants were also present. The undersigned asked Defendant Saba if the other co-defendants left. Defendant Saba testified that she did not know whether they left.

Next, Defendant Janice Sevre-Duszynska testified. Defendant Sevre-Duszynska testified that on September 26, 2016 she went to the Pentagon because she was an ESL (English as a Second Language) teacher in Lexington, Kentucky and an ordained priest. Defendant Sevre-Duszynska testified that she taught students from over sixty-five areas including conflict zones. At this point, the undersigned reminded Defendants that the trial was about failure to obey a lawful order and that the questions should be relevant to that charge. Next, Defendant Sevre-Duszynska testified that she was at the Pentagon that morning to deliver a petition, that she did not block any entrance, and that she had a constitutional right to be there. Defendant Sevre-Duszynska testified that the money used for weapons and defense could be used on the streets of Baltimore for after-school programs and affordable housing. The undersigned again reminded Defendant Sevre-Duszynska that the questions and answers should be related to the charge of failure to obey a lawful order. Defendant Sevre-Duszynska responded that she wanted to see tax-payer money go to other causes. Defendant Sevre-Duszynska testified that after hearing Lieutenant Dozier issue an order to leave or risk arrest that she had a constitutional right to remain at the entrance to give a petition to a police officer to deliver it to someone at the Pentagon. Defendant Sevre-Duszynska then said that she had students in Pakistan that she thinks

of often. The undersigned again reminded Defendant Sevre-Duszynska that her answers should be related to the charge of failure to obey a lawful order, otherwise her testimony would be terminated. On cross-examination, the Government asked Defendant Sevre-Duszynska if she heard Lieutenant Dozier ask the Defendants to leave. Defendant Sevre-Duszynska testified that she heard Lieutenant Dozier issue the order while the Defendants were standing near the entrance.

Next, Elizabeth Adams testified. Defendant Adams testified that she arrived at the Pentagon by bus and walked to the metro entrance and did not join the demonstration. Defendant Adams testified that she felt it was important to take a stand to stop the government from their audacious war crimes. Defendant Adams testified that to do this she wanted to witness the petition being brought to the Pentagon and to seek a meeting with someone at the Pentagon. Defendant Adams testified that she did not block any entrance and that she saw people entering the Pentagon. Defendant Adams testified that the Pentagon police refused the petition and did not attempt to facilitate a meeting with someone at the Pentagon. Defendant Adams testified that after being told to leave she did not leave because she had the right to be there and to stop the crimes of the government. On cross-examination, the Government asked Defendant Adams if, after no one accepted the petition and no meeting was set up, she heard Lieutenant Dozier tell Defendants that they could move to the designated protest area or risk being arrested. Defendant Adams testified that she did hear Lieutenant Dozier.

The Government and Defendants then gave closing arguments. The Government said that it respected Defendants and that the trial only had to do with the violation of a lawful order. The Government summarized the evidence presented by Lieutenant Dozier, including that a group of twenty-one people had gathered by the Pentagon entrance and that Lieutenant Dozier asked

13

Defendants three times to move to the designated protest area or risk arrest. The Government

noted that Defendants understood the order and did not move. The Government also said that

Lieutenant Dozier testified that the arrest had nothing to do with the viewpoint of Defendants or

their message but only related to public safety and ensuring people could enter the Pentagon and

the metro. The Government also said that each Defendant testified that she or he heard the order

and chose not to comply.

Defendant Phillip Runkel gave a closing argument advocating that people oppose war,

crimes against peace, and crimes against humanity. Defendant Runkel said that the Pentagon is

violating such prohibitions and that seeking a meeting with the Secretary of Defense was a

reasonable step and did not violate public safety.

Defendant Eve Tetaz gave a closing argument and said she was an eighty-five year old

retired teacher and felt obligated to speak out when she saw the law violated. She said that on

September 26, 2016 she heard the order to leave and refused the order because she did not

believe that the order was lawful. Defendant Tetaz said she was at the Pentagon to deliver a

petition and that she was not demonstrating and did not block any passage or entrance.

Defendant Tetaz said she had to speak out against the immoral, irresponsible, and illegal actions

of her country against destroying innocent property and the lives of her brothers and sisters who

happen to be of a different faith and a different language but were all beloved children.

Defendant Tetaz said that the only way she could see to speak out was to present the letter to the

Secretary of Defense.

Defendant Arthur Laffin also gave a closing argument. He said that Lieutenant Dozier

testified that he could not testify as to any of the Defendants sitting down and blocking the

Pentagon or identify any individuals prevented from entering the Pentagon on that day.

14

Defendant Laffin then quoted Martin Luther King, Jr. Defendant Laffin said that their intention in going to the Pentagon on September 26, 2016 was not to violate the law or to commit a crime but to uphold divine and international laws that prohibit crimes against humanity and that Defendants should not be arrested for nonviolently appealing to the Government. Defendant Laffin invited Judge Davis and Mr. Embroski, Special Assistant United States Attorney, to join in Defendants' efforts and said that Defendants had committed no crime. Defendant Laffin asked that they be found not guilty.

Next, the undersigned summarized the testimony given by each witness during trial. The undersigned also explained in detail the elements of the offense of violating a lawful order and noted that each Defendant, while under oath, admitted to violating the lawful order. The undersigned explained that each Defendant had an absolute right to exercise his or her First Amendment rights in the designated protest area, pursuant to the rules and regulations of the Pentagon. The undersigned explained that none of the Defendants have a constitutional right to present an in-person petition to the Secretary of Defense, explaining that such a right did not exist anywhere in the Constitution. The undersigned further explained that Defendants have an absolute right to exercise their concerns but that it was the manner in which those concerns were exercised that made them lawful or unlawful. Furthermore, the undersigned explained that the Pentagon rule limiting individuals gathering in front of the south pushout was lawful because the purpose of the rule was not to curtail freedom of expression but to ensure people could enter and exit the Pentagon and that the public could access the metro; therefore, the order given to leave or risk arrest was lawful. Finally, the undersigned explained that the only element of the crime left to prove was that Defendants violated a lawful order; the undersigned then highlighted the portion of each Defendant's testimony where he or she admitted to violating the lawful order.

Based on the evidence introduced and the testimony of Elizabeth Adams, Felton Davis, Janice Sevre-Duszynska, Nancy Gowen, Malachy Kilbride, Arthur Laffin, Phillip Runkel, Manijeh Saba, Eve Tetaz, and Anthony Dozier, the Court concluded that the United States had proven the charge of violation of a lawful order beyond a reasonable doubt. The Court found Defendants each guilty of failure to obey a lawful order and sentenced each Defendant to pay a fine of $350, with a $30 processing fee, and $10 special assessment.

Pursuant to Rule 58(g)(2)(B) of the Federal Rules of Criminal Procedure, Defendants Elizabeth Adams, Malachy Kilbride, Phillip Runkel, and Manijeh Saba have each appealed the judgment of United States Magistrate Judge Ivan D. Davis.[3]

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(C), the record consists of the original papers and exhibits, the recording of the proceedings, and the docket entries. A full record of the proceedings is available on the recording system.

_____ /s/ _____
Ivan D. Davis
United States Magistrate Judge

December 6, 2016
Alexandria, Virginia

---

[3] Federal Rule of Criminal Procedure 58(g)(2)(B) provides that "[a] defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." Defendant Elizabeth Adams filed her appeal on November 9, 2016; Defendants Phillip Runkel and Manijeh Saba filed their appeals on November 16, 2017; Defendant Malachy Kilbride filed his appeal on November 17, 2016. Therefore, because the judgment was entered on November 3, 2016 and notice of appeal was filed by November 17, 2016, Defendants' appeals were timely filed.

16